# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

Nasrin Hajian-Bahmany,

    Plaintiff,

v.                            CA No: 10-120 M

Women and Infants Hospital
of Rhode Island,

    Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case involves Plaintiff, Nasrin Hajian-Bahmany's ("Ms. Hajian-Bahmany") allegations of discrimination based on sex and national origin against her former employer, Defendant Women and Infant's Hospital of Rhode Island ("Hospital"). Before the Court is Defendant's Motion for Summary Judgment (Docket #13).

## I.    FACTS

The relevant facts are not in dispute and the parties appear to be in agreement on the applicable law. How the law applies to the facts, however, is very much in dispute.

Ms. Hajian-Bahmany was employed at the Hospital as a clinical social worker in its Project Link unit[1] for approximately six years, from April 29, 2002 until she was terminated on July 9, 2008. During her employment, up to the point of her termination, Ms. Hajian-Bahmany always received excellent annual evaluations and had no significant disciplinary problems.

---

[1] Project Link is a behavioral health program that services pregnant and postpartum women with current or past substance abuse and mental health issues.

Ms. Hajian-Bahmany, a female and native of Iran, was the only employee within her department born in the Middle East and the only employee whose native language is Farsi. The sole male employee within the department, Mathew Bouchard ("Mr. Bouchard"), apparently had a penchant for playing "practical jokes" on his co-workers at the Hospital. Mr. Bouchard's actions included, for example, taking pens and other objects from co-workers and hiding them, and placing a fake surveillance camera within Ms. Hajian-Bahmany's office during a time of added emphasis on security at the hospital.

Ms. Hajian-Bahmany complained to her direct supervisor, Eileen Dykeman ("Ms. Dykeman"), the clinical program manager for Project Link, who tolerated this behavior and never took any action to stop it. Another department supervisor, Alda Medeiros ("Ms. Medeiros") had also received complaints from Ms. Hajian-Bahmany about Mr. Bouchard's conduct. Upon reflection, both supervisors agree that Mr. Bouchard's behavior toward his co-workers was inappropriate. Ms. Dykeman was aware that Ms. Hajian-Bahmany was "upset and angry" about being the object of "practical jokes." Ms. Hajian-Bahmany testified at her deposition that she told Ms. Dykeman that she felt humiliated because of Mr. Boucher's conduct.

In addition to Mr. Bouchard's "practical jokes," Ms. Hajian-Bahmany alleges that Mr. Bouchard engaged in certain behavior that targeted her national origin. She testified that he "repeatedly" said "shut up" to her in Farsi, her native language, including in front of co-workers.[2] The Hospital denies that this exchange occurred on "many occasions," but admits that Mr. Bouchard "kept repeating it." There is no evidence that Ms. Hajian-Bahmany complained to her supervisors about this behavior when it occurred.

---

[2] Upon Mr. Bouchard's request, Ms. Hajian-Bahamany had previously taught him how to say "shut up" and other words and phrases in Farsi.

Additionally, on more than one occasion, Mr. Bouchard referred to Ms. Hajian-Bahmany as a "dictator" and he also placed a sign bearing the word "dictator" on her office door. Ms. Hajian-Bahmany alleges (but the Hospital lacks information to admit or deny) that Mr. Bouchard also made comments about what he saw in the news relative to Iranians, the Middle East, and Iranian dictator Mahmoud Ahmadinejad. When Ms. Hajian-Bahmany complained to one of her supervisors, Ms. Medeiros, she instructed Mr. Bouchard to stop using the term "dictator." Mr. Bouchard complied with this admonition, but was never disciplined.

With these events as a back-drop, the activities culminating in Ms. Hajian-Bahmany's termination took place on July 2, 2008. At a departmental meeting, the discussion turned to the status of one of Ms. Hajian-Bahmany's clients who had missed an appointment the previous day. Mr. Bouchard and Ms. Hajian-Bahmany had a verbal disagreement that led to her making physical contact with him. According to Ms. Hajian-Bahmany, she "tapped Bouchard on the arm" and according to Mr. Bouchard, she "struck his arm with a closed fist." Under any spin, it is undisputed that Ms. Hajian-Bahmany made unwanted physical contact with Mr. Bouchard.

After an investigation by the Hospital, Ms. Hajian-Bahmany was informed by Daniel Michaud ("Mr. Michaud"), the Vice President of Human Resources for the Hospital, that her employment was being terminated because she violated the Hospital's zero tolerance policy against workplace violence. The policy, which Ms. Hajian-Bahmany admits having received, defines violence to include any unwanted or hostile physical contact. The policy states that violence is always prohibited and appropriate discipline, including termination, will be imposed for violation of this policy.

Two former employees had previously been terminated by the hospital under this provision. There is no evidence of any discipline less-than-termination being imposed for violation of this Hospital policy.

After her termination, the Plaintiff filed a three count complaint against the Hospital. Counts I and II allege "discriminatory terms and conditions of employment, unlawful termination and retaliation based on gender and ethnic background" pursuant to the R.I. Civil Rights Act of 1990 (R.I. Gen. Laws § 42-112-1 et. seq.) and the R.I. Fair Employment Practices Act (R.I. Gen. Laws § 28-5-1 et. seq.), respectively. Count III alleges "discriminatory terms and conditions of employment, unlawful discharge and retaliation based on gender and ethnic background" pursuant to Title VII (42 U.S.C. § 2000 et. seq.). The Hospital has moved for summary judgment on all three counts.

## II. STANDARD OF REVIEW

Summary judgment can be granted only when the Court finds that there is no genuine issue of material fact and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court must and will view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Id.*

## III. ANALYSIS

First, there is absolutely no evidence in this case to support any of Ms. Hajian-Bahmany's gender discrimination claims. Therefore, the Court grants Defendant's motion for summary judgment with respect to the gender aspect of Ms. Hajian-Bahmany's claims. The Court will now analyze Ms. Hajian-Bahmany's remaining national origin based discrimination claims.

4

The three statutes cited in Ms. Hajian-Bahmany's three-count complaint provide essentially the same protection against discrimination based on national origin.[3] In this case, Ms. Hajian-Bahmany alleges that she was subjected to disparate treatment based on her ethnicity resulting in her termination, discriminatory retaliation, and a hostile work environment.

A. **Disparate Treatment**

The U.S. Supreme Court has set forth a burden-shifting method to analyze a claim for disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Under the *McDonnell Douglas* analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination. The employer then must state a legitimate, nondiscriminatory reason for its decision. If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination." *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) (internal citations omitted).

1. Prima Facie Case of Discrimination

Ms. Hajian-Bahmany establishes a prima facie case of discrimination by demonstrating that:

> (1) she is a member of a protected class; (2) she was performing her job at a level that rules out the possibility that she was fired for inadequate job performance; (3) she suffered an adverse job action by her employer; and (4) her employer sought a replacement for her with roughly equivalent qualifications.

---

[3] While Ms. Hajian-Bahmany cites three statutes (two state, one federal) as a basis for her complaint, the law underlying the state's statutory claims is based largely on federal case law interpreted and applying federal law under Title VII so the applicable case law for all three counts is the same. *Neri v. Ross Simons, Inc.*, 897 A.2d 42, 48 (R.I. 2006).

*Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 (1st Cir. 1994) (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965 (1992)). The First Circuit has held that proving a prima facie case in a Title VII action is "not onerous." *Id.* at 15 n.4. "If the plaintiff successfully bears this relatively light burden, we presume that the employer engaged in impermissible [ ] discrimination." *Id.* at 15 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).)

There is no dispute in this case, in fact the Hospital conceded at oral argument, that Ms. Hajian-Bahmany has established a prima facie case: Ms. Hajian-Bahmany, a Middle Eastern woman, is clearly part of a protected class; the parties agree that Ms. Hajian-Bahmany's annual performance evaluations were excellent; in terminating her employment, the Hospital adversely affected her employment; and Ms. Hajian-Bahmany's position was not filled but rather her clients were divided among the other clinicians with similar qualifications and job responsibilities. Accordingly, all of the elements of a prima facie case have been established.

2. <u>Nondiscriminatory Reason</u>

Because Ms. Hajian-Bahmany has met this modest prima facie burden, raising an inference of intentional discrimination, "that inference shifts the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

The Hospital has articulated a legitimate, nondiscriminatory reason for terminating Ms. Hajian-Bahmany - that she violated the Hospital's workforce violence policy by making unwanted physical contact with a co-worker. This reason for termination is supported by deposition testimony, evident from the policy itself, and not disputed by Ms. Hajian-Bahmany. Whether it was a tap or a closed fist punch, Ms. Hajian-Bahmany violated the Hospital's zero

tolerance policy and the Hospital enforced the policy by terminating her. Whether this Court or anyone else would have made that same decision given these circumstances is not relevant. "Courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Therefore the Hospital has met its burden of producing a legitimate nondiscriminatory reason for terminating Ms. Hajian-Bahmany's employment.

3.  Pretext

The burden then shifts back to Ms. Hajian-Bahmany, who must then prove that the Hospital's reason for termination was a pretext for discriminatory animus. "The 'ultimate touchstone' of the *McDonnell Douglas* analysis is whether the employer's actions were improperly motivated by discrimination. Evidence that the employer's stated reasons for its actions are pretextual can be sufficient to show improper motive, and hence, allow the plaintiff to survive summary judgment." *Kosereis*, 331 F.3d at 213-14 (internal citations omitted). "One method is to produce evidence that the plaintiff was treated differently than other similarly situated employees." *Id.* at 213 (*citing Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 585-86 (1st Cir. 1999)).

This is where Ms. Hajian-Bahmany's claim of disparate treatment ultimately fails. In this case, Ms. Hajian-Bahmany must prove that the reason for her termination - violation of the Hospital's zero tolerance workplace violence policy - was a pretext for her termination because she is Middle Eastern. Ms. Hajian-Bahmany has produced no evidence to support the assertion that her firing was a pretext for a discriminatory motive. Looking specifically at the record submitted by both parties, there is no evidence that Ms. Hajian-Bahmany was treated differently from other employees terminated under the same or similar circumstances. In fact, the record

shows that in each of two prior incidents of unwanted physical contact at the Hospital, the employees who struck a co-worker were also terminated.[4] There is no evidence of the Hospital ever having taken a different action with regard to a violation of this policy.

Because Ms. Hajian-Bahmany has not shown any evidence that her firing was a pretext for discrimination or that her termination for violating the Hospital's workplace violence policy was conducted disparately from other employees similarly situated, her claim based on disparate treatment due to her national origin fails.

### B. Retaliation

Ms. Hajian-Bahmany claims that her employment was terminated as retaliation for her complaints to her supervisors and to Mr. Michaud about the treatment she received from her co-worker, Mr. Bouchard. "To maintain a claim of discriminatory retaliation, a plaintiff must produce evidence that (1) [s]he engaged in protected conduct under Title VII; (2) [s]he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action." *Kosereis*, 331 F.3d at 217 (*citing Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002)). "It is insufficient for [plaintiff] to simply recount that [s]he complained and that [s]he was disciplined...." *King v. Hanover*, 116 F.3d 965, 968 (1st Cir. 1997). Because Ms. Hajian-Bahmany has failed to meet this evidentiary burden, her claims for discriminatory retaliation fail.

Ms. Hajian-Bahmany did engage in protected activity by complaining to her superiors about Mr. Boucher's conduct and she did experience an adverse employment decision, satisfying the first two elements. Reflecting on the record as to the third element of her retaliation claim,

---

[4] In one case, the employee was a member of a union so the termination went to arbitration. The employee was re-hired, but as a result of the arbitration and not as a result of the Hospital's decision.

8

however, there is neither any evidence, nor even a reasonable inference, of a causal connection between Ms. Hajian-Bahmany's complaints about Mr. Bouchard's behavior and her termination.[5] The Court considers the two audiences to which Ms. Hajian-Bahmany complained about Mr. Boucher that form the basis for her retaliation claim. The first was her supervisors - Ms. Dykeman and Ms. Medeiros - to whom she complained during various points in late 2007. The second audience was Mr. Michaud in Human Resources to whom she complained in July of 2008, which was after the incident but during the subsequent investigation and termination discussions.

As to Ms. Hajian-Bahmany's complaints to the first audience, a consideration of temporal proximity prevents the Court from inferring retaliation because Ms. Hajian-Bahmany's complaints about Mr. Bouchard's conduct to Ms. Dykeman and Ms. Medeiros occurred months before her termination. In looking at the timing of events, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). From the record in this case, it appears that Ms. Hajian-Bahmany had not complained about Mr. Boucher to any superior post-August 2007 - almost a year before she was terminated in July 2008. Based on the First Circuit's consideration of temporal proximity in *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 32 (1st Cir. 2007) and *Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010), the Court finds that Ms. Hajian-Bahmany's claim for retaliation based on her earlier complaints to her first audience must fail.

---

[5] In fact, when asked at her deposition if "the hospital somehow retaliated against" her, Ms. Hajian-Bahmany answered, "Well, no."

As for her complaint to Mr. Michaud, those retaliation claims too must fail. While she did complain to Mr. Michaud during the discussion that ultimately led to her termination, that discussion occurred as a result of her physical contact with Mr. Boucher and was not initiated by Ms. Hajian-Bahmany for the purposes of making a complaint about Mr. Boucher. In fact, Mr. Michaud testified that he had no knowledge of Ms. Hajian-Bahmany's complaints about Mr. Boucher prior to the investigation of the physical contact incident. Because Ms. Hajian-Bahmany never complained to Mr. Michaud or to anyone in Human Resources prior to the incident, and because the two supervisors to whom she did complain about Mr. Boucher's conduct had no role in her termination, there is no causal connection between the adverse employment decision and her protected conduct. Therefore, Ms. Hajian-Bahmany's claim of discriminatory retaliatory firing fails for lack of evidence.

## C. Hostile Work Environment

Moving on to Ms. Hajian-Bahmany's hostile work environment claims, in order to prove those claims, she must demonstrate to the Court:

> "(1) that she [ ] is a member of a protected class; (2) that she was subjected to unwelcome [ ] harassment; (3) that the harassment was based upon [national origin]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [ ] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established."

*O'Rourke v. Providence,* 235 F.3d 713, 728 (1st Cir. 2001). Because Ms. Hajian-Bahmany has either established or raised a disputed fact as to the first, second, third, and fifth elements required to prove a hostile work environment, the Court's analysis of this claim focuses only on the fourth and sixth elements, considering whether the harassment was severe and pervasive and whether employer liability has been established.

The Court is very conscious of the fact that an analysis of a hostile work environment claim is "fact specific" and that the "determination is often reserved for a fact finder." *Vega-Colon v. Wyeth Pharm.*, 625 F.3d 22, 32 (1st Cir. 2010) (quoting *Pomales v. Celulatres Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)). The First Circuit, however, has imparted to district courts a clear legal standard that a plaintiff must meet regarding the "severe and pervasive and abusive work environment" element. The First Circuit held that:

> A hostile work environment exists in violation of Title VII '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.' There is no 'mathematically precise test' to determine whether [a plaintiff] presented sufficient evidence that [s]he was subjected to a hostile work environment.

*Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003) (internal citations omitted).

To persuade the Court that the discrimination was "severe or pervasive," Ms. Hajian-Bahmany points to the following, all of which were perpetrated by Mr. Boucher: (1) one incident where Mr. Boucher placed a fake surveillance camera in her office; (2) repeatedly being told to "shut-up" in her native language of Farsi (which Ms. Hajian-Bahmany had taught him to say); and (3) Mr. Boucher calling her a "dictator" on multiple occasions and putting a sign with that word on her office door on one occasion. Ms. Hajian-Bahmany testified that she was distraught and upset by Mr. Boucher's actions.

In this case, the Court finds that Ms. Hajian-Bahmany's evidence of a few incidents of name calling and a single "practical joke" falls short of what is required to establish a hostile work environment claim. Much like the First Circuit's upholding of the grant of summary judgment for the employer in *Vega-Colon*, the Court finds that Ms. Hajian-Bahmany has not forged allegations bolstered by evidence that the conduct underlying her hostile work environment claims were severe and pervasive. In *Vega-Colon*, the Court held:

> Here [the plaintiff] alleges a very limited number of comments, along with more frequent name calling. Although the evidence demonstrates that the comments and name calling may have been subjectively offensive to [the plaintiff], in this court's opinion, neither amounted to objectively offensive conduct as the behavior was not severe, physically threatening, or humiliating. Moreover, [the plaintiff] has failed to set forth sufficient evidence from which a jury could conclude that the complained of conduct interfered with his work performance to an extent that is unreasonable or that altered the conditions of his employment.

*Vega-Colon*, 625 F.3d at 32; *see also Kosereis*, 331 F.3d at 216 (internal citations omitted) ("name calling . . . and the teasing . . . do not rise to the level of 'severe and pervasive conduct,' that is required for a hostile work environment claim. A hostile work environment generally is not created by a 'mere offensive utterance,' nor does it arise from 'simple teasing, offhand comments, and isolated incidents.'").

In this case, the comments about Ms. Hajian-Bahmany's national origin involved saying "shut-up" in Farsi and calling her a dictator. These actions, collectively, are not sufficient to establish that Ms. Hajian-Bahmany's workplace was permeated with the discriminatory "intimidation, ridicule and insult" necessary to meet the requirement of a claim under First Circuit precedent. *Kosereis*, 331 F.3d at 216. Moreover, as is clear from Ms. Hajian-Bahmany's excellent performance evaluations during her tenure at the Hospital, there is no evidence that her co-worker's conduct interfered with her work performance and/or altered the conditions of her employment. The law in this instance does not protect Ms. Hajian-Bahmany from what may well have been an obnoxious, annoying and not-so-funny co-worker.

Therefore, because Ms. Hajian-Bahmany has failed to establish a factual dispute that would establish that the hostility in her work environment was severe and pervasive, the Court enters summary judgment for the Hospital on this claim.[6]

---

[6] The Court need not rule on whether Ms. Hajian-Bahmany has established a claim under the sixth element of a hostile work environment, that there was some basis for employer liability, because the claim fails under the fourth element.

## IV. CONCLUSION

For the reasons stated above, this Court grants summary judgment in favor of Defendant Women & Infants Hospital of Rhode Island on all counts.

IT IS SO ORDERED:

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge
August 4th, 2011